Keith A. Jacoby, Bar No. 150233
kjacoby@littler.com
Stacey F. Blank, Bar No. 174378
sblank@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, California  90067.3107
Telephone:  310.553.0308
Fax No.:      310.553.5583

Attorneys for Defendant
ESCONDIDO MEDICAL INVESTORS
LIMITED PARTNERSHIP LIFE CARE
CENTER OF ESCONDIDO

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA GUINILING, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESCONDIDO MEDICAL INVESTORS LIMITED PARTNERSHIP LIFE CARE CENTER OF ESCONDIDO, a Limited Partnership; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. '22CV1208 L    KSC<br><br>**NOTICE OF REMOVAL TO FEDERAL COURT BY DEFENDANT ESCONDIDO MEDICAL INVESTORS LIMITED PARTNERSHIP LIFE CARE CENTER OF ESCONDIDO** |

1  **TO THE CLERK AND HONORABLE JUDGES OF THE UNITED STATES DISTRICT**

2  **COURT IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA, PLAINTIFF AND**

3  **HIS ATTORNEYS OF RECORD:**

4      **PLEASE TAKE NOTICE** that Defendant ESCONDIDO MEDICAL

5  INVESTORS LIMITED PARTNERSHIP LIFE CARE CENTER OF ESCONDIDO

6  ("Defendant") hereby removes the action of *Gloria Guinling v. Escondido Medical*

7  *Investors Limited Partnership Life Care Center of Escondido., et al.,* pending before

8  the Superior Court of the State of California for the County of San Diego, Case No. 37-

9  2022-00019520-CU-OE-CTL, to the United States District Court for the Southern

10  District of California.  This removal is based on 28 U.S.C. §§ 1332, 1441 and 1446.

11  This Notice is based upon this Court's jurisdiction over the parties pursuant to 28 U.S.C.

12  § 1332(a) and 1332(d) (Class Action Fairness Act of 2005 or "CAFA").

13      In support of this Notice of Removal, Defendant states the following:

14  **I.    STATEMENT OF JURISDICTION**

15      1.    This Court has original jurisdiction over this action pursuant to CAFA,

16  which vests the United States district courts with original jurisdiction of any civil action:

17  (a) that is a class action with a putative class of more than one hundred (100) members;

18  (b) in which any member of a class of plaintiffs is a citizen of a state different from any

19  defendant; and (c) in which the matter in controversy exceeds the sum or value of five

20  million dollars ($5,000,000), exclusive of interest and costs.  *See* 28 U.S.C. §1332(d).

21  CAFA authorizes removal of such actions in accordance with United States Code, title

22  28, section 1446.  As set forth below, this case meets all of CAFA's requirements for

23  removal and is timely and properly removed by the filing of this Notice.

24      2.    Additionally, this Court has original jurisdiction under 28 U.S.C. section

25  1332(a)(1), and this case may be removed pursuant to the provisions of 28 U.S.C.

26  section 1441(a), because it is a civil action wherein the amount in controversy exceeds

27  seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and it is

28  between "citizens of different States."  As set forth below, this case meets all of Section

1    1332's requirements for removal and is timely and properly removed by the filing of
2    this Notice.

3    **II.    VENUE**

4        3.    This action was filed in the Superior Court for the State of California,
5    County of San Diego.  Venue properly lies in the United States District Court for the
6    Southern District of California, pursuant to 28 U.S.C. sections 84(b), 1391, 1441, and
7    1446.

8    **III.    DEFENDANT**

9        4.    Defendant is a Limited Partnership organized under the laws of the State
10   of Tennessee.  Each of its partners is similarly organized under the laws of the State of
11   Tennessee or is an individual who maintains their principal place of residence in
12   Tennessee.  Defendant is a citizen of the State of Tennessee for diversity purposes
13   pursuant to 28 U.S.C. section 1332(a).

14       5.    For diversity jurisdiction purposes, the citizenship of a limited partnership
15   is the citizenship of its limited as well as its general partners.  *Carden v. Arkoma*
16   *Associates,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).

17       6.    At the time this action was commenced in state court, Defendant was, and
18   still is, a limited partnership organized under the laws of the state of Tennessee.
19   Escondido's General partner is and was Life Care Affiliates II Limited Partnership
20   (LCA II), and its Limited partner is and was Forrest L. Preston.  There were and are no
21   other partners of Escondido.  (Declaration of Cindy Cross ("Cross Decl."), ¶s 1 and 4.)
22   At the time this action was commenced in state court, LCA II was and still is a limited
23   partnership organized under the laws of Tennessee.  LCA II's General partner was and
24   still is Developers Investment Company, Inc. (Developers) and its Limited partner is
25   and was Forrest L. Preston. There were and are no other partners of LCA II. (Cross
26   Decl., ¶s 1 & 5.)

27       7.    At the time this action was commenced in state court, Developers was and
28   still is a corporation incorporated in the state of Tennessee. (Cross Decl., ¶ 4.)

1  Developers' corporate headquarters are located in Cleveland, Tennessee, where
2  decisions are made regarding the direction of the corporation. Cleveland, Tennessee is
3  where most of its corporate and executive administrative functions are conducted.
4  Developers does not maintain any office or location in the State of California and does
5  not have an agent for service of process registered within the State of California. (Cross
6  Decl., ¶ 5.) Thus, Developers' principal place of business is Tennessee, and Developers
7  is a citizen of Tennessee.

8      8.    Forrest L. Preston is a resident and citizen of the State of Tennessee.
9  (Cross Decl., ¶ 7)

10     9.    Accordingly, Defendant's citizenship, based upon the citizenship of its
11  partners is Tennessee for diversity purposes.

12     10.   The Complaint names as defendants "DOES 1 through 50."  Pursuant to
13  28 U.S.C. section 1441(a), however, the citizenship of defendants sued under fictitious
14  names must be disregarded for the purpose of determining diversity jurisdiction.  *See*
15  *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

16  **IV.    STATUS OF PLEADINGS, PROCESS AND ORDERS**

17     11.   On or about May 23, 2022, Plaintiff Gloria Guinling ("Plaintiff") filed a
18  putative class action complaint ("Complaint") in the Superior Court of California,
19  County of San Diego, which is captioned as follows: *Gloria Guinling, an individual, on*
20  *behalf of herself and on behalf of all persons similarly situated v. Escondido Medical*
21  *Investors Limited Partnership Life Care Center of Escondido, a Limited Partnership;*
22  *and Does 1 to 50, inclusive*, designated as Case No. 37-2022-00019520-CU-OE-CTL.
23  *See* Declaration of Stacey Blank in Support of Notice to Federal Court of Removal of
24  Civil Action from State Court ("Blank Decl.") ¶ 2.  A true and correct copy of the
25  Summons and Complaint is attached hereto as **Exhibit A** and incorporated herein by
26  reference.

27     12.   Plaintiff served Defendant with the Summons, Complaint and the Civil
28  Case Cover Sheet on July 18, 2022, through its registered agent for service of process.

1    A true and correct copy of the Civil Case Cover Sheet is attached hereto as **Exhibit B**.

2    A true and correct copy of the Proof of Service filed with the court is attached hereto as

3    **Exhibit C**. *See* Blank Decl. ¶ 3. Pursuant to 28 U.S.C. section 1446(a), the documents

4    attached hereto as **Exhibits A, B** and **C** constitute all process, pleadings, and orders

5    served upon Defendant and filed in this action. *See* Blank Decl. ¶ 4.

6         13.    Plaintiff's Complaint alleged nine causes of action for: (1) Unfair Business

7    Practices (Cal. Bus. & Prof. Code §§ 17200, et seq.); (2) Failure to Pay Minimum

8    Wages (Cal. Lab. Code §§ 1194, 1197, and 1197.1); (3) Failure to Pay Overtime Wages

9    (Cal. Lab. Code §§ 510); (4) Failure to Provide Required Meal Periods (Cal. Lab. Code

10   §§ 226.7 and 512); (5) Failure to Provide Required Rest Periods (Cal. Lab. Code §§

11   226.7 and 512); (6) Failure to Provide Accurate Itemized Statements (Cal. Lab. Code

12   §226); (7) Failure to Reimburse Employees for Required Expenses (Cal. Lab. Code §

13   2802); (8) Failure to Provide Wages When Due (Cal. Lab. Code §§ 201, 202, and 203);

14   (9) Failure to Pay Sick Pay Wages (Cal. Lab. Code §§ 201-204, 233, 246).

15        14.    Pursuant to the Complaint, Plaintiff brings this class action "on behalf of

16   herself and a California class, defined as all individuals who are or previously were

17   employed by DEFENDANT in California, including any employees staffed with

18   DEFENDANT by a third party, and classified as non-exempt employees (the

19   "CALIFORNIA CLASS") at any time during the period beginning four (4) years prior

20   to the filing of this Complaint and ending on the date as determined by the Court (the

21   "CALIFORNIA CLASS PERIOD")" ("Class Period") *See* Exhibit A, Complaint ¶ 4.

22        15.    Plaintiff specifically alleges two classes of individuals for this class action:

23   (1) The California Class, and (2) The California Labor Sub-Class. *See* Exhibit A,

24   Complaint ¶¶ 27, 37. The "California Class" is defined as "All persons who are or

25   previously were employed by DEFENDANT in California, including any employees

26   staffed with DEFENDANT by a third party, and classified as non-exempt employees

27   (the "CALIFORNIA CLASS") at any time during the period beginning four (4) years

28   prior to the filing of this Complaint and ending on the date as determined by the Court".

1  *Id.* at ¶ 27.  The "California Labor Sub-Class" is defined as "All members of the

2  CALIFORNIA CLASS who are or previously were employed by DEFENDANT in

3  California, including any employees staffed with DEFENDANT by a third party, and

4  classified as non-exempt employees (the "CALIFORNIA LABOR SUB-CLASS") at

5  any time during the period beginning three (3) years prior to the filing of this Complaint

6  and ending on the date as determined by the Court".  *Id.* at ¶ 37.

7       16.  Plaintiff seeks unpaid wages, actual damages, restitution, declaratory

8  relief, pre and pre-judgment interest, statutory penalties, civil penalties, costs of suit,

9  and attorneys' fees, among other damages.  *See* Exhibit A, Complaint, Prayer for Relief.

10  Plaintiff's Complaint is otherwise silent as to the value of relief sought by way of this

11  action.  *Id.*

12       17.  To the best of Defendant's knowledge, no further proceedings have been

13  filed in Plaintiff's state court action in the Superior Court, and the papers described

14  above constitute all process, pleadings and orders filed and/or served in the Superior

15  Court.  *See* Blank Decl. ¶¶ 4.

16  **V.  TIMELINESS OF REMOVAL AND NOTICE**

17       18.  An action may be removed from state court by filing a notice of removal,

18  together with a copy of all process, pleadings, and orders served on the Defendant

19  within thirty (30) days of service on defendant of the initial pleading.  *See* 28 U.S.C.

20  § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354

21  (1999) (the 30-day removal period runs from the service of the summons and

22  complaint).  Removal of this action is timely because this Notice of Removal has been

23  filed within thirty (30) days from July 18, 2022, when Plaintiff served the Complaint

24  on Defendant. 28 U.S.C. § 1446(b).  *See* Blank Decl. ¶ 3.

25  **VI.  NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT**

26       19.  Contemporaneously with the filing of this Notice of Removal in the United

27  States District Court for the Southern District of California, the undersigned is

28  providing written notice of such filing to Plaintiff's counsel of record: Blumenthal

Nordrehaug Bhowmik De Blouw LLP, 2255 Calle Clara, La Jolla, California 92037. *See* Blank Decl. ¶ 5. In addition, a copy of Defendant's Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Diego. *Id*.

## VI.    REMOVAL JURISDICTION PURSUANT TO CAFA

20.    This Court has original jurisdiction over this action pursuant to CAFA. CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which there are greater than one hundred (100) members of the class, and any member of a class of plaintiffs is a citizen of a state different from any defendant, and the matter in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of qualifying actions in accordance with 28 U.S.C. section 1446. This case meets each of CAFA's requirements for removal because, as is set forth more particularly below: (1) the proposed class contains at least one hundred (100) members; (2) there is diversity between at least one putative class member and Defendant; (3) the total amount in controversy exceeds five million dollars ($5,000,000); and (4) Defendant is not a state official or other governmental entity.

### A. Plaintiff's Case Is Pled as a Class Action.

21.    Under CAFA, a "class action" means any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

22.    Plaintiff's Complaint asserts that she brings this class action "on behalf of herself and a California class, defined as all individuals who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt employees (the "CALIFORNIA CLASS") at any time during the period beginning four (4) years prior

1    to the filing of this Complaint and ending on the date as determined by the Court (the
2    "CALIFORNIA CLASS PERIOD")" ("Class Period")  *See* Exhibit A, Complaint ¶ 4.

3    **B. Plaintiff Brings This Action on Behalf of More Than 100 Persons.**

4    23.    CAFA provides that "the number of members of all proposed plaintiff
5    classes in the aggregate [not be] less than 100." 28 U.S.C. § 1332(d)(5)(B).  CAFA
6    defines "class members" as those "persons (named or unnamed) who fall within the
7    definition of the proposed or certified class in a class action."    28 U.S.C. §
8    1332(d)(l)(D).

9    24.    Here, the putative classes that Plaintiff purports to represent significantly
10   exceeds one hundred (100) members.  *See* Cal. Civ. Proc. Code § 340; *Ramirez v.*
11   *Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1209 (N.D. Cal. 2013); *Robles v. Schneider*
12   *Nat'l Carriers, Inc.*, 2017 U.S. Dist. LEXIS 123065, at *25 (C.D. Cal. 2017).
13   Defendant's records indicate that it employed four hundred and thirty-eight (438) non-
14   exempt, hourly employees in California between May 23, 2018, and August 15, 2022,
15   and that as of 12:01 a.m. on August 16, 2022, Defendant separated their employment
16   relationship with all employees.  *See* Cross Decl. ¶ 8.

17   25.    Because Plaintiff's proposed class exceeds one hundred (100) members,
18   CAFA's numerosity requirement is satisfied.  *See* 28 U.S.C. § 1332(d)(5)(B).

19   **C. Plaintiff Is a Citizen of California and Defendant Is a Citizen of**
20   **Tennessee.**

21   26.    CAFA diversity jurisdiction exists if "any member of a class of plaintiffs
22   is a citizen of a state different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

23   27.    For diversity purposes, an individual is a "citizen" of the state in which he
24   or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir.
25   1983).  A party's residence can be prima facie evidence of domicile. *See Lew v. Moss*,
26   797 F.2d 747,751 (9th Cir. 1986) (holding that residency can create a rebuttable
27   presumption of domicile supporting diversity of citizenship).  Defendant's employment
28   records reflect that Plaintiff informed Defendant that her last known home address was

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

in San Diego, California. *See* Cross Decl., ¶ 3. Therefore, Defendant asserts Plaintiff is a citizen of California for purposes of removal jurisdiction.

28.    "Unincorporated association" covers all noncorporate business entities. *Ferrell v. Express Check Advance of South Carolina* LLC 591 F. 3d 698, 705 (4th Cir. 2010). For purposes of a "minimal diversity" class action, an unincorporated association—plaintiff or defendant—is a citizen only of the state under whose laws it was organized or where it has its principal place of business. 28 USC § 1332(d)(10).

29.    Defendant is a Limited Partnership that was formed under the laws of the State of Tennessee and has had its Principal Executive Office in Tennessee since its founding, in 1988. Defendant continues to maintain its headquarters and principal executive offices in Cleveland, Tennessee. *See* Cross Decl., ¶¶ 4-7.

30.    Alternatively, even if this court were to find that Defendant is a citizen of the State of California for purposes of CAFA, minimal diversity would still exist. Defendant's employment records reflect that ten putative class members informed Defendant that their last known home addresses were in states other than California, and included Arizona, Florida, Hawaii, Idaho, Indiana, Nevada, Tennessee, Texas and Washington. *See* Cross Decl., ¶ 12. Therefore, Defendant asserts there is at least one putative class member who is not a California resident for purposes of removal jurisdiction.

31.    For these reasons, the requirements for diversity jurisdiction are met because Plaintiff and Defendant are citizens of different states.

**D. More Than $5,000,000 Is In Controversy.**

32.    CAFA authorizes the removal of class actions in which, among other factors mentioned above, the amount in controversy for all class members exceeds five million dollars ($5,000,000). *See* 28 U.S.C. § 1332(d). An allegation in the complaint that the amount in controversy is less than $5 million, such as alleged here without any factual support, does not bind the court for purposes of determining the amount in controversy and requires the application of the preponderance of the evidence standard.

*Trahan v. U.S. Bank Nat'l Ass'n*, No. C 09-03111 JSW, 2014 WL 116606, at *5 (N.D. Cal. Jan. 13, 2014). Here, as Plaintiff's Complaint is silent as to the amount in controversy claimed for each claim asserted, a preponderance of the evidence standard applies to determine the amount in controversy. *See Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 397 (9th Cir. 2010), *citing Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).

33. Although Defendant expressly denies any liability for the damages alleged in Plaintiff's Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied the Court must presume that Plaintiff will prevail on her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability"). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [defendant's] liability." *Lewis*, *supra,* 627 F. 3d at 400 (9th Cir. 2010). Stated differently, the ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what defendants might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Investments, Inc.* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds five million dollars ($5,000,000), defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

34. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. §1446(a). The United States Supreme Court in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), recognized that "as specified in section 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the court questions the allegations of the

notice of removal is supporting evidence required. *Id.* Otherwise, "the defendant's amount in controversy allegation should be accepted" just as plaintiff's amount in controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Dart Cherokee Basin Operating Company LLC*, 135 S. Ct. at 553. "[N]o antiremoval presumption attends cases invoking CAFA." *Id.* at 554.

35.    Furthermore, "the Ninth Circuit has made clear that 'Section 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees." *Brooks v. Ford Motor Co.,* No. CV 20-302 DSF (KKX), 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020) (quoting *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007)). Any position to the contrary "has been rejected by the Ninth Circuit." Id. at *3 (citing *Fritsch v. Swift Transp. Co. of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018)). While district courts have split on this issue in the past, recent Ninth Circuit precedent directs district courts to engage in some consideration of prospective attorneys' fees when calculating the amount in controversy. *See Quinonez v. FCA US LLC,* No. 2:19-CV-2032-KJM, 2020 WL 3397565, at *4 (E.D. Cal. June 19, 2020); see *Arias v. Residence Inn by Marri*ott, 936 F.3d 920, 927–29 (9th Cir. Sept. 3, 2019) (overruling district court's remand order where that court had declined to include attorneys' fees in its calculations).

36.    In *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit held that future attorney's fees can count toward the amount of controversy in diversity removal. Although Fritsch arose in the CAFA context, it extends to diversity removal generally. The Ninth Circuit reversed the district court's remand, holding "that if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy. The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *Id.* at 788. The court determined that this conclusion was mandated by its decision in *Chavez v. JP Morgan Chase & Co.*, 888 F.3d 413 (9th Cir. 2018), where it had held that the amount

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

10.

in controversy for purposes of general diversity removal " 'encompasses all relief a court may grant on that complaint if the plaintiff is victorious.' " *Id*. at 414-15. Chavez had concluded that future wages at stake in the litigation could be included in calculating the amount in controversy for removal purposes even if they had not accrued. Applied to the present question of fees, the Ninth Circuit explained that where a prevailing plaintiff would be entitled to fees, those fees fall within the relief encompassed by the amount in controversy. *Id*. In reaching this conclusion, the court rejected the plaintiff's arguments that future attorney fees are inherently speculative, splitting from contrary authority.

37.    In addition, in *Flores v. M & C Hotel Ints., Inc.*, No. CV 15-00418 DDP, 2015 WL 1646410 (C.D. Cal. Apr. 14, 2015), the court included attorney's fees in the amount in controversy calculation and denied plaintiff's motion to remand, finding the amount in controversy satisfied for diversity jurisdiction. *Flores* was a single-plaintiff case brought by a housekeeper alleging failure to pay him all wages due, failure to provide meal and rest periods, failure to pay overtime wages, failure to pay minimum wage, failure to issue accurate itemized wage statements, failure to pay wages upon termination, and unlawful business practices. In that case—unlike here—plaintiff had alleged specific amounts sought for certain causes of action that totaled about $46,000, thus below the jurisdictional threshold; therefore, Plaintiff argued Defendant could not show that the amount in controversy exceeded $75,000 for diversity jurisdiction. Defendant argued the amount in controversy was satisfied by taking into consideration not only the specified amounts sought, but also the additional compensatory damages, attorney's fees, and punitive damages sought. One of the unspecified damages sought was statutory penalties for failure to pay minimum wage under Labor Code section 1194.2. Defendant calculated the penalty fees plaintiff could recover to be $25,850 for the four-year period, including a $100 fee for the initial failure to pay all minimum wages and $250 for every biweekly pay period of unpaid minimum wages. *Id*. at *2. Also, defendant estimated the minimum attorney's fees plaintiff could recover as

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

11.

$10,925 before the case was fully adjudicated, including intended at least 7-hour deposition of plaintiff and preparation and attendance of likely 2-day trial. *Id*. The court commented: "Even if the case does not reach the trial stage, motion practice alone could require a similar number of hours. This is to say nothing of hours spent on discovery. Plaintiff's total attorneys' fees could therefore easily total $10,000 or, likely, substantially more." *Id*. at *3. In sum, the court denied plaintiff's motion to remand, finding the amount in controversy satisfied for diversity jurisdiction.

38.    Here, Plaintiff does not allege the amount in controversy.  Plaintiff simply states the amount in controversy is under $5,000,000 and provides no support or reference to this afterward. See Exhibit A, Complaint ¶ 4. When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so, and the notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Investments, Inc.* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015).

39.    While Defendant denies Plaintiff's claims of wrongdoing and denies her request for relief therein, as specifically outlined below, the factual allegations in Plaintiff's Complaint and the total amount of damages, penalties, attorneys' fees, and other monetary relief at issue in this action clearly demonstrate that the total amount in dispute is in excess of this Court's jurisdictional minimum. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) (facts presented in notice of removal, combined with plaintiffs' allegations, sufficient to support finding that jurisdictional limits satisfied). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

40.    Plaintiff seeks to recover unpaid wages, actual damages, restitution, declaratory relief, pre and post-judgment interest, statutory penalties, civil penalties,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

costs of suit, and attorneys' fees, among other damages for alleged failure to pay wages, failure to provide meal and rest breaks, failure to provide sick pay, failure to pay minimum and overtime wages, inaccurate wage statements, failure to maintain accurate records, failure to timely pay all wages during employment, failure to timely pay all wages upon separation, failure to reimburse business expenses, and violation of California's Unfair Competition Law, as well as injunctive relief. *See* Exhibit A, Complaint, Prayer for Relief.

41.    Specifically, Plaintiff's Complaint alleges that Defendant "administers a uniform practice of rounding the actual time worked and recorded by PLAINTIFF and CALIFORNIA CLASS Members, always to the benefit of DEFENDANT, so that during the course of their employment, PLAINTIFF and CALIFORNIA CLASS Members are paid less than they would have been paid had they-been paid for actual recorded time rather than 'rounded' time", and "Such a pattern, practice, and uniform administration of corporate policy is unlawful and entitles PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS to underpaid sick pay wages, including interest thereon, applicable penalties, attorney's fees, and costs of suit" *See* Exhibit A, Complaint ¶¶ 8, 119; s*ee, e.g., Mejia v. DHL Express (USA), Inc.,* 2015 U.S. Dist. LEXIS 67212, *10-11 (C.D. Cal. May 21, 2015) (100% violation rate may be based on allegations of uniformly adopted and maintained policies).

42.    As noted *supra*, Plaintiff includes a cause of action for violation of the Unfair Business Practices Law ("UCL"), Business and Professions Code § 17200, *et seq. See* Exhibit A, Complaint ¶¶ 45-59.  Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class' minimum wage and overtime claims from three (3) to four (4) years from the filing of the Complaint, which in this case, extends the statute of limitations back to May 23, 2018.  *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

43.    While Defendant denies Plaintiff's claims of wrongdoing and denies her

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

13.

request for relief therein, as specifically outlined below, the factual allegations in Plaintiff's Complaint and the total amount of alleged unpaid wages, damages, penalties, attorneys' fees, and other monetary relief at issue in this action clearly demonstrate that the total amount in dispute is in excess of this Court's jurisdictional minimum. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) (facts presented in notice of removal, combined with plaintiffs' allegations, sufficient to support finding that jurisdictional limits satisfied). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in-controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

44.    For purposes of removal, Defendant may assume (without conceding) the truth of Plaintiff's allegations for purposes of assessing amount in controversy, and based on a preliminary review of its records, Defendant had employed 438 non-exempt, hourly employees working for it between May 23, 2018, and August 15, 2022. *See* Cross Decl. ¶ 8. Additionally, as of 12:01 a.m. on August 16, 2022, all hourly, non-exempt employees separated their employment from Defendant. *See* Cross Decl. ¶ 8.

### 1. Amount in Controversy – Plaintiff's Minimum Wage Claim

45.    In Plaintiff's Second Cause of Action, Plaintiff alleges that Defendants failed to pay Plaintiff and the Class for all hours worked in violation of California Labor Code §§ 201, 202, 203, 1194, 1197, and 1197.1. *See* Exhibit A, Complaint ¶¶ 60-73. As such, Plaintiff seeks compensation for Defendant's alleged failure to fully compensate all hours worked, interest, attorneys' fees, and costs of suit. *Id.* at ¶ 73.

46.    The statutory period for recovery of unpaid wages is calculated under a four-year statute of limitations. *See* Cal. Lab. Code § 338(a) (setting a three-year period); Cal. Bus. & Prof. Code § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

47.    In claims for unpaid minimum wage under California Labor Code section

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

14.

1194, employees may also recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2. Plaintiff specifically seeks restitution for all monies due to Plaintiff and the classes Plaintiff seeks to represent and all other relief the Court may deem just and proper. *See* Exhibit A, Complaint, Prayer for Relief.

48.    While Defendant denies the validity and merit of Plaintiff's unpaid minimum wage claim, for purposes of removal only, the alleged putative class would have worked, at maximum, ninety-one thousand one hundred and four (91,104) workweeks during the statutory period from May 23, 2018, to May 23, 2022. *See* Blank Decl. ¶ 6.

49.    Using a conservative estimate of one half of the maximum number of work weeks and one (1) hour of unpaid wages per work week, the amount in controversy for the minimum wage claim, including liquidated damages, totals **$1,366,560.00** (45,552 workweeks x 1 hour per workweek x $15.00 per hour (2022 California Minimum Wage) x 2 (liquidated damages).

### 2. Amount in Controversy – Plaintiff's Overtime Claim

50.    In Plaintiff's Third Cause of Action, Plaintiff alleges Defendant failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198.    *See* Exhibit A, Complaint ¶¶ 74-89.    As such, Plaintiff seeks compensation for Defendant's alleged failure to fully compensate overtime hours, interest, attorneys' fees, and costs of suit. *Id.* at ¶ 89.

51.    California Labor Code section 510 requires that employers pay non-exempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or forty (40) in a week. Additionally, non-exempt employees must be paid one-and-one-half times their regular rate for the first eight (8) hours worked on the seventh (7th) day worked in a single workweek.  Employers must also pay double time for all hours worked over twelve (12) hours in a day, and for all hours worked in excess

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

15.

of eight (8) on the seventh (7th) consecutive day of work in a single workweek. Cal. Lab. Code § 510(a). The statutory period for recovery under California Labor Code section 510 is calculated under a four-year statute of limitations. *See* Cal. Lab. Code § 338(a) (setting a three-year period); Cal. Bus. & Prof. Code § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

52. During the relevant statutory time period from May 23, 2018 to May 23, 2022, Defendant's records show that during the class period beginning 4 years prior to the filing of the complaint, the alleged putative class would have worked, at maximum, ninety one thousand one hundred and four (91,104) workweeks during the period from May 23, 2018, to May 23, 2022. *See* Blank Decl. ¶ 6.

53. Using a conservative estimate of one half of the maximum number of work weeks and one (1) hour of unpaid overtime per workweek, the amount in controversy for the unpaid overtime wage claim totals **$1,024,920.00** (45,552 workweeks * 1 hour per workweek * $15.00 per hour * 1.5 overtime rate). *See Jasso v. Money Mart Express, Inc.*, No. 11–CV–5500 YGR, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) (one hour of overtime per workweek was reasonable given Plaintiff's allegations of a "uniform policy and scheme" and that putative class members worked over eight (8) hours per day and/or forty (40) hours in a week); *Jimenez v. Allstate Ins. Co.*, No. CV 10–8486 AHM (FFMx), 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (estimate of one (1) hour of unpaid overtime per workweek was reasonable based on allegation of "consistent" overtime work).

### 3. Amount in Controversy – Plaintiff's Meal Period Claim

54. In Plaintiff's Fourth Cause of Action, Plaintiff seeks payments for alleged missed meal periods. *See* Exhibit A, Complaint ¶¶ 90-93. Plaintiff alleges Defendant failed to provide Plaintiff and the members of the Classes with the legally required off-duty meal periods and failed to pay Plaintiff and the members of the Class one (1) hour of pay at the regular rate for each non-compliant meal break. *See* Exhibit A, Complaint

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

16.

¶ 91-92   As such, Plaintiff seeks compensation for Defendant's alleged failure to provide compliant meal periods, interest, attorneys' fees, and costs of suit.  *Id.* at ¶ 93.

55.    An employee denied meal periods may be entitled to an additional hour's wages per day for failure to provide meal periods and an additional hour's pay per day for failure to provide rest periods. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).  The California Supreme Court held that employers must pay premium payments to employees for missed meal, rest, and recovery breaks at the employee's "regular rate of pay" instead of their base hourly rate.  *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 878 (2021).

56.    While Defendant denies the validity and merit of Plaintiff's missed meal period claim, for purposes of removal only, the alleged putative class would have worked, at maximum, ninety-one thousand one hundred and four (91,104) workweeks during the period from May 23, 2018, to May 23, 2022.  See Blank Decl. ¶ 6.

57.    Using a conservative estimate of one half of the maximum number of work weeks and one (1) missed meal period per workweek and applying the minimum wage of $15 per hour, the amount in controversy for the missed meal period claim totals **$683,280.00** (45,552 workeeks * 1 missed meal period per workweek * $15.00 per hour)

### 4.  Amount in Controversy – Plaintiff's Rest Period Claim

58.    In Plaintiff's Fifth Cause of Action, Plaintiff seeks payments for alleged missed rest periods.  *See* Exhibit A, Complaint ¶¶ 94-97.   Plaintiff alleges that Defendant failed to provide Plaintiff and Class Members with rest periods required by Labor Code sections 226.7 and the applicable IWC wage order and categorically failed to pay any and all rest period wages due.  *See* Exhibit A, Complaint ¶ 95.   As such, Plaintiff seeks compensation for Defendant's alleged failure to provide compliant rest periods, interest, attorneys' fees, and costs of suit.  *Id.* at ¶ 97.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

17.

59.     An employee denied rest breaks may be entitled to an additional hour's wages per day for failure to provide meal periods and an additional hour's pay per day for failure to provide rest periods. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).  The California Supreme Court held that employers must pay premium payments to employees for missed meal, rest, and recovery breaks at the employee's "regular rate of pay" instead of their base hourly rate.  *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 878 (2021).

60.     Plaintiff seeks payments for alleged missed rest periods, interest, attorneys' fees, and costs of suit.  *See* Exhibit A, Complaint, Prayer for Relief.

61.     While Defendant denies the validity and merit of Plaintiff's missed rest break claim, for purposes of removal only, the alleged putative class would have worked, at maximum, ninety-one thousand one hundred and four (91,104) workweeks during the period from May 23, 2018, to May 23, 2022.  *See* Blank Decl. ¶ 6.

62.     Using a conservative estimate of one half of the maximum number of work weeks and one (1) missed rest break per workweek, and applying the minimum wage of $15 per hour, the amount in controversy for the missed rest break claim totals **$683,280.00** (45,552 work weeks * 1 missed rest break per workweek * $15.00 per hour).

### 5.  Amount in Controversy – Plaintiff's Inaccurate Wage Statements Claim

63.     In Plaintiff's Sixth Cause of Action, Plaintiff alleges that Defendant knowingly and intentionally failed to furnish Plaintiff and members of the Classes with timely, itemized statements showing (a) total hours, (b) gross wages earned, (c) all deductions, and/or (d) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked at each hourly rate by each respective individual. *See* Exhibit A, Complaint ¶¶ 98-101.  Plaintiff alleges Plaintiff

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

18.

and members of the Classes seek damages and penalties pursuant to Labor Code section 226 for Defendant's violations of Labor Code section 226. *Id.* at ¶ 101.

64.    An employee suffering injury as a result of a knowing and intentional failure  by an employer to comply with California Labor Code section 226(a)'s wage statement requirements is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of four thousand dollars ($4,000) per employee, and is entitled to an award of costs and reasonable attorney's fees.  Cal. Lab. Code § 226(e). The statutory period for California Labor Code section 226(e) penalties is one year. Cal. Civ. Proc. Code § 340.

65.    While Defendant denies the validity and merit of Plaintiff's inaccurate wage statements claim, for purposes of removal only, based on a preliminary review of their records, Defendant's records show that the alleged putative class of 438 non-exempt, hourly employees would have worked a maximum of 45,552 pay periods during the statutory period from May 23, 2018, to May 23, 2022 (26 pay periods for 4 years for each non-exempt employee).  *See* Cross Decl., ¶ 9, Blank Decl, ¶ 7.

66.    Assuming, arguendo, that each employee during the statutory period was entitled to fifty dollars ($50) for the initial allegedly inaccurate pay stub and one-hundred-dollar ($100) penalty thereafter per pay period, not to exceed four thousand dollars ($4,000), the potential amount, based upon the total number of pay periods, would equal significantly more than statutory limit of $4,000 per person.  Accordingly, the amount in controversy for this claim is $1,752,000, or $4,000 for each putative class member.

### 6.  Amount in Controversy – Plaintiff's Failure to Reimburse Business Expenses Claim

67.    In Plaintiff's Seventh Cause of Action, Plaintiff alleges that during the relevant time period, Defendant had a company-wide policy of requiring Plaintiff and

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

19.

1    members of the Classes to utilize their own cellphones for the job and that Defendant
2    has, and continues to have, a company-wide policy and/or practice of not reimbursing
3    employees for expenses related to personal cell-phone use necessarily incurred in
4    violation of Labor Code section 2802.  *See* Exhibit A, Complaint ¶¶ 102-105.  The
5    statute of limitations for this claim is three years.  *See* Cal. Civ. Proc. Code § 338.
6    Plaintiff further alleges Plaintiff and members of the Classes are entitled to recover civil
7    penalties, attorney's fees, costs, and interest thereon.  *See* Exhibit A, Complaint ¶ 105.

8        68.    While Defendant denies the validity and merit of Plaintiff's unreimbursed
9    business expenses claim, for purposes of removal only, based on a preliminary review
10   of their records, Defendant's records show that the alleged putative class of 438 non-
11   exempt, each hourly employees would have worked a maximum of 21,204 months
12   during the statutory period from May 23, 2018, to the filing of the complaint May 23,
13   2022 (12 months x 4 years x 438 for each putative class member). *See,* Blank Decl. ¶ 8.

14       69.    Plaintiff asserts that personal cell phones were used for work, the cost of
15   which was not reimbursed. Although, Plaintiff has not plead any specific facts regarding
16   how much Plaintiff believes she and/or the putative class members were allegedly owed
17   for alleged use of their personal cell phones.   For purposes of removal only,
18   conservatively assuming that Defendant failed to reimburse even $15 per month in
19   necessary expenses, for one half of the time placed in controversy, the business expense
20   claim is **$157,680.00** ($720 per employee ($15 per month x 48 months) multiplied by
21   438 employees = $315,360.00 ÷ 2).

22           **7. Amount in Controversy – Plaintiff's Waiting Time**
                **Penalties**
23
24       70.    Plaintiff seeks damages including waiting time penalties for terminated
25   employees pursuant to Labor Code § 203.  *See* Exhibit A, Complaint, Prayer ¶ 2 (G).
26   Per section 203, the daily wages of the separated employee shall continue as a penalty
27   from the date of separation until paid, but in no event should continue more than 30
28   days.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

20.

71.     While Defendant denies the validity and merit of Plaintiff's claim for waiting time penalties, for purposes of removal only, based on a preliminary review of their records, Defendant's records show that the alleged putative class of 438 non-exempt, hourly employees all separated their employment as of August 15, 2022.

72.     Based upon the allegations, the estimated waiting time claim totals $1,576,800.00. (Eight (8) hours at the minimum wage of $15.00 per hour for thirty (30) days for each putative class member).

### 8.  Amount in Controversy – Plaintiff's Sick Pay and Failure to Timely Pay Wages During Employment Claims

73.     In Plaintiff's Ninth Cause of Action, Plaintiff alleges that Defendant failed to pay Plaintiff and members of the Class sick pay at the correct rate as Plaintiff received compensation in addition to hourly wages, but those additional amounts were not included when calculating sick pay wages.  *See* Exhibit A, Complaint ¶ 114-119.  As such, Plaintiff seeks compensation for Defendant's alleged failure to provide sick pay, interest, attorneys' fees, and costs of suit.  *Id.* at ¶ 119.

74.     In Plaintiff's Eighth Cause of Action, Plaintiff alleges that Defendant failed to pay Plaintiff and members of the Classes all wags due within the time periods specified by Labor Code section 200, 201. 202, and 203.  *See* Exhibit A, Complaint ¶ 106-113.  Plaintiff further alleges Plaintiff and the Class have been damaged in amount according to proof at time of trial.  *Id.* at ¶ 113.

75.     As Defendant easily meets the amount in controversy requirements without these claims, an analysis of these claims is not included in this Notice of Removal as it would only add to the overall amount in controversy.

### 9.  Amount in Controversy – Plaintiff's Attorneys' Fees Claim

76.     Plaintiff seeks attorneys' fees and costs in her Complaint.  *See* Exhibit A, Complaint, Prayer for Relief.  Plaintiff's Complaint also alleges claims – for example, for the inaccurate wage statements – which allow for the recovery of attorneys' fees.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

21.

1    *See* Exhibit A, Complaint, Prayer for Relief.; Cal. Lab. Code § 218.5.  It is well-settled

2    that claims for statutory attorneys' fees are to be included in the amount in controversy.

3    *See, e.g., Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*,

4    549 U.S. 822 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)

5    ("We hold that where an underlying statute authorizes an award of attorneys' fees, either

6    with mandatory or discretionary language, such fees may be included in the amount in

7    controversy.").

8        77.    In California, it is not uncommon for an attorneys' fee award to be twenty-

9    five (25) to thirty-three (33) percent of a settlement or judgment.  *See, e.g., McGuigan*

10   *v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in

11   settlement of $1.6 million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting

12   award of $435,000 in attorneys' fees for class claims involving failure to pay wages,

13   liquidated damages, penalties, and waiting time penalties); *Amaral v. Cintas Corp.*

14   *No. 2*, 163 Cal. App. 4th 1157, 1216-1218 (2008) (affirming award of $727,000 in

15   attorneys' fees plus a multiplier that equated to total fees of $1,199,550 in class case

16   involving violations of a living wage ordinance, the California Labor Code, as well as

17   unfair competition and contract claims); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*,

18   91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless

19   whether the percentage method or the lodestar method is used, fee awards in class

20   actions average around one-third of the recovery.").

21       78.    The attorneys' fees benchmark in the Ninth Circuit is twenty-five (25)

22   percent.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)

23   ("We note with approval that one court has concluded that the 'bench mark' percentage

24   for the fee award should be 25 percent."); *Lo v. Oxnard Euro. Motors, LLC*, 2012 WL

25   1932283, at *3 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a

26   benchmark for an attorneys' fees awards a twenty-five percent of the common fund

27   recovery.").

28       79.    Based on Plaintiff's allegations, the amount in controversy for Plaintiff's

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

22.

claims totals at least **$7,244,520.00**. This amount far exceeds five million dollars ($5,000,000) absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at the benchmark percentage of twenty-five (25) percent further increases the amount in controversy by **$1,811,130.00** for a total amount in controversy of **$9,055,650.00**.

### 13. Summary of Amounts in Controversy

80.    Removal of this action is therefore proper as the aggregate value of Plaintiff's class causes of action for unpaid wages, failure to provide compliant meal and rest periods, failure to provide sick pay, failure to timely pay wages during employment, non-compliant wage statements, waiting time penalties, failure to reimburse business expenses, failure to furnish a safe and healthful place of employment, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of five million dollars ($5,000,000). *See* 28 U.S.C. § 1332(d)(2).

| Plaintiff's Alleged Claim | Amount in Controversy (Conservative Estimate) |
|---|---|
| Unpaid Minimum Wage | **$1,366,560.00** |
| Unpaid Overtime | **$1,024,920.00** |
| Meal Period Premiums | **$683,280.00** |
| Rest Period Premiums | **$683,280.00** |
| Unpaid Sick Pay and Untimely Payment of Wages During Employment Claims | Amount in controversy already exceeds $5 million. These would only further exceed the $5 million dollars. |
| Inaccurate Wage Statements | **$1,752,00.00** |
| Unreimbursed Business Expenses | **$157,680.00** |
| Waiting Time Penalties | **$1,576,800.00** |
| Attorneys' Fees | **$1,811,130.00** |
| **Amount in Controversy** | **$9,055,650.00** |

81.    Accordingly, although Defendant denies Plaintiff's claims as alleged in the

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

23.

Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the five million dollars ($5,000,000) threshold required under CAFA.

WHEREFORE, Defendant prays that the Court remove this civil action from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

## VII. REMOVAL DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. §1332

82.    28 U.S.C. Section 1332(a) provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. . . (1) citizens of different States[.]" This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to Section 1332(a), and may be removed to this Court by ERMC pursuant to 28 U.S.C. section 1441(b) because it is a civil action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below.

83.    To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and domiciled in a particular state. *Bank of N.Y. Mellon v. Nersesian*, 2013 WL 8284799, at *7 (C.D. Cal. 2013) (citing *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983)). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *Nersesian*, 2013 WL 8284799, at *7 (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). Residence is *prima facie* evidence of one's domicile. *Sadeh v. Safeco Ins. Co.*, 2012 WL 10759737, at *4 (C.D. Cal. 2012) (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff resides in the County of San Diego, State of California. *See* Cross Decl. ¶ 3. Thus, Plaintiff is a citizen of California.

84.    As established above, in paragraphs 4 through 10, which are incorporated herein as though full set forth, at the time this action was commenced in state court,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

24.

Defendant was, and still is, a Limited Partnership, of which all of its partners, both general and limited are and were residents and citizens of the State of Tennessee. *See* Cross Decl., ¶¶ 1, 4-7.

85.    Accordingly, Defendant's citizenship, based upon the citizenship of all of its partners, is that of Tennessee for diversity purposes.

86.    Defendant need only show by a preponderance of the evidence that Plaintiff's claimed damages exceed the jurisdictional requirement. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996). Though Defendant expressly denies any liability for the damages alleged in Plaintiff's Complaint, to determine whether the minimum amount in controversy has been met, the Court must presume that Plaintiff will prevail on each of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not the amount, if any, that Defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)

87.    The amount in controversy in the Complaint exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, as required by Section 1332 (a). Plaintiff seeks injunctive relief, restitutionary disgorgement of profits, recovery of compensatory damages of lost income and other benefits, including missed meal and rest periods, lost wages, unpaid minimum wages, overtime wages, penalties, liquidated damages, and attorney fees. (**Exhibit A**, Compl. ¶¶53, 54, 57-59, 68-73, 79-89, 91-93, 95-97, 100-101, 104-105, 113, 117-119 and Prayer for Relief, ¶¶ 1-3.)

88.    Plaintiff alleges that she was employed with Defendant since October 2013 to September of 2021.  (Exhibit A, Compl. ¶ 3.)  During the relevant time alleged in the complaint beginning on May 23, 2018, which 4 years prior to the date of filing of the complaint, Plaintiff earned an average of $30.50 per hour. Plaintiff's status changed from full time to part time on 7/13/2021.  At the end of her employment, Plaintiff's earned $32.15 per hour.  Plaintiff was paid 82 times between May 23, 2018 and the end

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

25.

1    of her employment in September, 2021 as alleged in the complaint. *See* Cross Decl., ¶

2    11.

3       89.    Full time employment is the equivalent of two hundred and fifty-five (255)

4    eight hour shifts in a calendar year based upon two thousand and forty (2040) hours.

5    Part time employment is the equivalent of one hundred and twenty-seven (127) eight

6    hour shifts in a calendar year based upon one thousand and twenty (1020) hours. Based

7    upon the allegations of the complaint, Plaintiff worked from May 23, 2018 through

8    September, 2021. *See* Exhibit A, Complaint ¶ 3. This equates to 3.14 years full time

9    employment and .15 years part time employment, or a total of eight hundred and twenty

10   (820) shifts. *See* Blank Decl., ¶ 9.

11      90.    Plaintiff alleges that she was required to work while clocked out during

12   what is supposed to be her off-duty meal break. *See* Exhibit A, Complaint ¶ 8. Based

13   upon the allegations of the complaint Plaintiff alleges that she is due 0.5 hours of

14   additional pay for each day worked, which totals $12.505.00 [(820 shifts x $30.50

15   average hourly rate) x 0.5 hours]. *See* Cross Decl., ¶ 11, Blank Decl. ¶ 9.

16      91.    Plaintiff also alleges that as a result of the conduct of Defendant she was

17   unable to take her 30 minute off-duty meal breaks, entitling her to payment of an

18   additional one hour of wages for each day upon which she was unable to take her 30

19   minute off-duty meal breaks. *See* Exhibit A, Complaint ¶¶ 91-92. Based upon the

20   allegations of the complaint Plaintiff alleges that she is due 1 hours of additional pay

21   for each day worked, which totals $25,010.00 [(820 shifts x $30.50 average hourly rate)]

22   *See* Cross Decl., ¶ 11, Blank Decl. ¶ 9.

23      92.    Plaintiff also alleges that as a result of the conduct of Defendant she was

24   unable to take her 10 minute rest period, entitling her to payment of an additional one

25   hour of wages for each day upon which she was unable to take her a rest period. *See*

26   Exhibit A, Complaint ¶¶ 95-96. Based upon the allegations of the complaint Plaintiff

27   alleges that she is due 1 hours of additional pay for each day worked, which totals

28   $25,010.00 [(820 shifts x $30.50 average hourly rate)]. *See* Cross Decl., ¶ 11, Blank

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

26.

1  Decl. ¶ 9.

2      93.    Plaintiff also alleges that as a result of the conduct of Defendant her wage

3  statements were inaccurate in violation of Labor Code section 226, and that she is due

4  damages pursuant to that section, which provides damages not to exceed $4,000.  Based

5  upon the number of pay periods and plaintiff's allegations, the maximum she could

6  recover is $4,000.

7      94.    Plaintiff also alleges that she was not paid within seven (7) days of the

8  close of payroll in violation of Labor Code section 204(d). *See* Exhibit A, Complaint

9  ¶16.  Plaintiff alleges that pursuant to Labor Code section 210 she can recover a civil

10  penalty of $100 for the initial violation and each subsequent violation, or any willful or

11  intentional violation $200 dollars.  *See* Exhibit A, Complaint ¶15. Based upon 82 wage

12  statements and Plaintiff's allegations, the amount claimed is $16,300.00.  [(81 x $200)

13  + $100)]. *See* Cross Decl., ¶ 11, Blank Decl. ¶ 9,

14      95.    Plaintiff also alleges she is due waiting time penalties, which are calculated

15  at her daily rate of pay for 30 days.  *See* Exhibit A, Complaint ¶111. Based upon this

16  allegation, the amount claimed to be due is $7,716.00.  [($32.15 rate of pay upon

17  separation x 8 hours) x 30 days] *See* Cross Decl., ¶ 11.

18      96.    Plaintiff also alleges that she was not paid wages, when due and seeks

19  liquidated damages in connection with this claim.  Although Defendant disputes this

20  claim, assuming that at a minimum she is owed wages once per work week, this

21  translates to 164 workweeks.  At her average rate of $30.50, conservatively her claim

22  totals $10,004.00.

23      97.    Plaintiff seeks attorneys' fees and costs in her Complaint.  *See* Exhibit A,

24  Complaint, Prayer for Relief.  Plaintiff's Complaint also alleges claims – for example,

25  for the inaccurate wage statements – which allow for the recovery of attorneys' fees.

26  *See* Exhibit A, Complaint, Prayer for Relief.; Cal. Lab. Code § 218.5.  It is well-settled

27  that claims for statutory attorneys' fees are to be included in the amount in controversy.

28  *See*, *e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

27.

549 U.S. 822 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

98.    In California, it is not uncommon for an attorneys' fee award to be twenty-five (25) to thirty-three (33) percent of a settlement or judgment.  *See, e.g.*, *McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million).

99.    The attorneys' fees benchmark in the Ninth Circuit is twenty-five (25) percent.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Lo v. Oxnard Euro. Motors, LLC*, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery.").

100.    Based on Plaintiff's allegations, the amount in controversy for Plaintiff's claims totals at least **$100,545.00**.  This amount far exceeds seventy-five thousand dollars ($75,000) absent any inclusion of attorneys' fees.  However, taking into account attorneys' fees at the benchmark percentage of twenty-five (25) percent further increases the amount in controversy by **$25,136.25** for a total amount in controversy of **$125,681.25.00**.

101.    A summary of these potential damages claimed is shown below. Clearly, this amount exceeds the amount in controversy threshold of $75,000.

| Plaintiff's Alleged Claim | Amount in Controversy (Conservative Estimate) |
|---|---|
| Meal Period Premiums | **$25,010.00** |
| Rest Period Premiums | **$25,010.00** |
| Wages owed for working during meal periods | **$12,505.00** |

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

28.

| Plaintiff's Alleged Claim | Amount in Controversy (Conservative Estimate) |
|---|---|
| Wage Statement per Labor Code 226 | $4,000.00 |
| Paid more than 7 days after the close of the pay period | $16,300.00 |
| Waiting Time Penalties | $7,716.00 |
| Minimum Wages owed plus liquidated damages | 10,004.00 |
| Attorneys' Fees | $25,136.25.00 |
| Amount in Controversy | $125,681.25 |

102.  Accordingly, although Defendant denies Plaintiff's claims as alleged in the Complaint, the minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the 75,000 threshold required under 28 U.S.C. Section 1332(a).

WHEREFORE, Defendant prays that the Court remove this civil action from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

Dated: August 17, 2022

Respectfully submitted,

LITTLER MENDELSON, P.C.

/s/ STACEY F. BLANK

Keith A. Jacoby
Stacey F. Blank

Attorneys for Defendant
ESCONDIDO MEDICAL INVESTORS
LIMITED PARTNERSHIP LIFE CARE
CENTER OF ESCONDIDO

4860-8318-8526.4 / 066156-1016

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

29.