UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA GUINILING, on behalf of herself and all persons similarly situated,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ESCONDIDO MEDICAL INVESTORS LIMITED PARTNERSHIP LIFE CARE CENTER OF ESCONDIDO, and DOES 1–50,<br><br>　　　　　　　　　　　　　Defendants. | Case No.:  22-cv-1208-L-KSC<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>**[ECF No. 7]** |

Pending before the Court is Plaintiff Gloria Guiniling's ("Plaintiff") motion to remand.  (ECF No. 7.)  Defendant Escondido Medical Investors Limited Partnership Life Care Center of Escondido ("Defendant") opposed, (ECF No. 8), and Plaintiff replied, (ECF No. 7).  The Court decides this matter on the papers without oral argument. Civ. L.R. 7.1.  For the reasons stated below, the Court **GRANTS** the motion.

I.      BACKGROUND

According to the allegations in the complaint, (ECF No. 1-4), Plaintiff is a former non-exempt employee of Defendant in the state of California.  Plaintiff originally filed this action in the San Diego Superior Court on behalf of herself and a class of "all

1

individuals who are or previously were employed by Defendant in California" and are or were classified as non-exempt employees. (ECF No. 1-4, at 5.) Plaintiff asserts nine causes of action: (1) unfair competition in violation of California Business and Professions Code sections 17200 *et seq.*, (2) failure to pay minimum wages, (3) failure to pay overtime wages, (4) failure to provide required meal periods, (5) failure to provide required rest periods, (6) failure to provide accurate itemized statements, (7) failure to reimburse employees for required expenses, (8) failure to provide wages when due, and (9) failure to pay sick-pay wages. (*See generally id.*)

Defendant timely removed this action on August 17, 2022, asserting that this Court has jurisdiction over the putative class pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"), and diversity jurisdiction over Plaintiff individually pursuant to 28 U.S.C. § 1332(a). (*See* ECF No. 1.) On September 16, 2022, Plaintiff filed the instant motion contesting the amount-in-controversy requirements for jurisdiction under § 1332. (ECF No. 7.)

## II.   AMOUNT IN CONTROVERSY—CAFA

### A.   Legal Standard

Removal is proper where federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction to hear a class action if the class has at least 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *See* U.S.C. § 1332(d)(2), (5)(B); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Initially, the removing defendant need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); 28 U.S.C. § 1446(a). "Thereafter, the plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal

jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

"A factual attack, by contrast, 'contests the truth of the [defendant's] factual allegations, usually by introducing evidence outside the pleadings.'" *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (quoting *Leite*, 749 F.3d at 1121). "When a factual attack is mounted, the responding party 'must support her jurisdictional allegations with competent proof . . . under the same evidentiary standard that governs in the summary judgment context.'" *Id.* (citing *Leite*, 749 F.3d at 1121 (9th Cir. 2014)). In such a case, the movant "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met."[1] *Leite*, 749 F.3d at 1121 (citing *Harris*, 682 F.3d at 851); *see also Dart Cherokee*, 574 U.S. at 88; 28 U.S.C. § 1446(c)(2)(B). This rule applies regardless of whether Plaintiff affirmatively states in the complaint that damages do not exceed $5 million. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975 (9th Cir. 2013). Plaintiff only challenges the amount-in-controversy requirement; thus the Court only addresses this issue.

B. **Discussion**

In the notice of removal, Defendant relied on the declarations of Cindy Cross, an officer familiar with the Defendant organization, and Defendant's counsel Stacey F. Blank. (ECF Nos. 1-2, 1-3.) Ms. Cross's declaration stated that Defendant employed 438 non-exempt hourly employees in the relevant time period. (*Id.* at 3.) Ms. Cross also confirmed that the Defendant organization operated 7 days a week, 52 weeks a year and issued paychecks every other week, or 26 times a year. (*Id.*) Ms. Blank's declaration used the figures in Ms. Cross's declaration to conclude that the 438 putative class

---

[1] Defendant's argument that remand is inappropriate because Plaintiff failed to make specific allegations or offer evidence concerning the amount in controversy, (ECF No. 8, at 13–15), is unpersuasive because the burden lies with Defendant as the moving party.

members would have collectively worked 91,104 work weeks in the relevant four-year period, equaling 45,552 pay periods. (ECF No. 1-3, at 3.)

To establish the amount in controversy Defendant assumed that each putative class member experienced one of each of the following violations per pay period: failure to pay minimum wage, failure to pay overtime wages, failure to provide meal periods, failure to provide rest periods, and inaccurate wage statements.[2] (ECF No. 1, at 16, 17, 18, 19, 20.) Defendant also assumed that each putative class member is entitled to maximum damages for waiting-period violations. (*Id.* at 22.) Plaintiff claimed that personal cell phones were used for work, so Defendant calculated the damages for the reimbursement-of-business-expenses claim for each class member to be $15 per month for half of the relevant time period based on the cost of monthly plans for common cell phone carriers. (*Id.* at 21.) Defendant supported this estimate by attaching excerpts from the carriers' websites to the opposition. (ECF No. 8-1, at 4, 6.) Lastly, Defendant adds attorneys' fees in the amount of 25% of recovery to the total amount in controversy.[3] (ECF No. 1, at 24.) Relying on these calculations, Defendant asserts that the amount in controversy totals $9,055,650.00, far exceeding the $5 million requirement. (ECF No. 1, at 24.)

The Court finds that, without evidence supporting the assumptions that underlie the above calculations, Defendant has failed to meet its burden. "[A] damages assessment may require a chain of reasoning that includes assumptions," but "those assumptions cannot be pulled from thin air" and must be "grounded in real evidence." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). Courts in this district have consistently rejected assumptions as arbitrary, despite any level of objective reasonableness, where the defendant has not offered any supporting evidence. *See, e.g., Baretich v. Everett Fin., Inc.*, No. 18-cv-1327-MMA-BGS, 2018 WL 4579857, at *5

---

[2] The damages for each violation were calculated using the minimum wage for California in 2022. (*See* ECF No. 1, at 16, 17, 18, 19, 20.)

[3] Defendant did not address damages for the claims of unpaid sick pay and untimely payment of wages during employment. (ECF No. 1, at 24.)

(S.D. Cal. Sep. 25, 2018) ("Ms. Dworshak's declaration does not address defendant's alleged violation rates and thus 'offers no information by which the Court may conclude that Defendant's assumptions were not pulled from thin air'" (quoting *Ibarra*, 775 F.3d at 1199)); *Sanders v. Old Dominion Freight Line, Inc.*, No. 16-cv-2837-CAB-NLS, 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) (noting that "without evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture"); *Basile v. Aaron Bros., Inc.*, No. 3:17CV485-L(NLS), 2018 WL 655360, at *2 (S.D. Cal. Feb. 1, 2018) (finding allegations based only on the complaint and that lack evidentiary support are "insufficient to support the assumption of any particular rate violation").

The Defendant's declarations support half of their calculations. The declarations evidence the number of employees and possible work weeks but do not offer any additional evidence to support the violation rates. The Court therefore cannot decipher the reasonableness of a violation rate that brings the damages above the jurisdictional threshold. For example, it may be reasonable to calculate the damages of claims using minimum wage, but without evidence concerning the number by which the minimum wage rate is to be multiplied, it is impossible to determine whether such damages exceed the jurisdictional threshold.

Defendant argues that Plaintiff pled "at least two claims based upon a uniform policy and practice" and pled the rest of the claims in a generalized manner that suggests widespread violations and supports a high violation rate. (ECF No. 8, at 12–13.) "Although these allegations indicate that violations were regular, they do not speak to their frequency, and are therefore insufficient to support the assumption of any particular rate of violation." *Basile*, 2018 WL 655360, at *2 (citing *Ibarra*, 775 F.3d at 1198–99); *see also Ibarra*, 775 F.3d at 1198–99 ("[A] 'pattern and practice' of doing something does not necessarily mean *always* doing something."). As such, Defendant's reliance on the general allegations in the complaint to form the foundation for the amount in controversy is unavailing.

As for attorneys' fees, Defendant "did not meet their burden to establish that amount in controversy as to any of the claims"; therefore any fee calculation is likewise "unsupported." *Basile*, 2018 WL 655360, at *2.  In sum, Defendant has not shown by a preponderance that the amount-in-controversy requirement is satisfied as to the putative class.  Accordingly, the putative class action must be remanded.

### III.   AMOUNT IN CONTROVERSY—DIVERSITY JURISDICTION

#### A.   Legal Standard

"Because CAFA explicitly expands diversity jurisdiction rather than diminishes its scope, failure to meet CAFA requirements does not preclude the possibility of meeting traditional diversity jurisdiction requirements under § 1332(a)." *Weaver v. Amentum Servs., Inc.*, No. 22-CV-00108-AJB-NLS, 2022 WL 959789, at *6 (S.D. Cal. Mar. 30, 2022) (quotation omitted).  Standard diversity jurisdiction requires complete diversity of citizenship between the parties and an amount in controversy exceeding $ 75,000. 28 U.S.C. § 1332.  The procedural framework and preponderance standard used to analyze a contested amount in controversy under CAFA also applies to claims brought pursuant to § 1332(a).  *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

#### B.   Discussion

Defendant contends that the total amount in controversy as to Plaintiff individually totals $125,681.25.  (ECF No. 1, at 29.)  To support this contention, Defendant includes evidence that Plaintiff worked a total of 820 shifts during the relevant time period.  (ECF No. 1-3, at 4.)  Defendant then assumed, based on the general allegations in the complaint, that Plaintiff is entitled to an extra hour and a half of pay for each day worked and that Plaintiff suffered from one meal-period violation every workday.  (ECF No. 1, at 27.)  Defendant calculated these damages using an average pay of $30.50 per hour even though Plaintiff's pay increased by the end of her employment.  (*Id.* at 27–30.) Defendant also assumed maximum recovery for wage-statement penalties and waiting-period penalties in addition to an award of 25% attorneys' fees.  (*Id.* at 28–30.)

Defendant's calculations suffer from the same deficiencies noted above. The assumptions Defendant relies on lack any evidentiary support concerning the frequency of the violations Plaintiff suffered individually. It follows that Plaintiff's individual claims must be remanded for the same reasons as the class claims.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is **GRANTED**.[4]

**IT IS SO ORDERED.**

Dated:  February 13, 2023

Hon. M. James Lorenz
United States District Judge

---

[4] Defendant requests a short continuance in order to conduct discovery specific to the amount in controversy if the Court finds remand appropriate. (ECF No. 8, at 28–29.) The Ninth Circuit has held that where a defendant "fail[s] to present to the district court any pleading, evidence, or admission that establishes that it is more likely than not that jurisdiction lies . . . it is well within the court's discretion to remand to state court rather than ordering jurisdictional discovery, with the knowledge that later-discovered facts may prompt a second attempt at removal." *Abrego Abrego*, 443 F.3d at 691. Thus, the Court declines to grant a stay in order to conduct further discovery.